**Frederick Gene SHEPPARD et al., Appellants,**

v.

**John BECK et al., Appellees.**

**No. 17895.**

Court of Civil Appeals of Texas, Fort Worth.

Oct. 20, 1977.

Rehearing Denied Nov. 17, 1977.

Mock & Fleniken, and William J. Fleniken, Jr., Fort Worth, for appellants.

Heard L. Floore, and W. Wallace Brady, Fort Worth, for appellee John Beck.

Touchstone, Bernays & Johnston, and Webber W. Beall, Jr., Dallas, for appellee Leonard Boyd.

## OPINION

MASSEY, Chief Justice.

Suit was for common law damages by the Sheppards because of personal injury and property damage sustained as a result of nighttime vehicular collision with a horse loose on a State Highway. The horse was the property of defendant John Beck and was being stabled on the premises of defendant Leonard Boyd.

At the conclusion of the trial the case was withdrawn from the jury with take nothing judgment rendered by the court in favor of both defendants. The Sheppards appealed.

The take nothing judgment in favor of defendant Boyd is affirmed. Judgment in favor of the defendant Beck is reversed and remanded for a new trial.

Location where the collision of the Sheppard's automobile with Beck's horse occurred is on U.S. Highway 377 immediately south of the City of Denton. Nearby is the 30 acres of land belonging to defendant Boyd, adjacent to the highway on its west side. There is property adjoining the 30 acres which is under lease to Boyd, but the amount is not stated in the evidence. There is absence of description of Boyd's premises, i. e., whether wooded or cleared (save for some trees which are shown by a partial photograph), and whether generally flat or otherwise.

Boyd provided stables for some six or seven horses belonging to others on his property, including the horse "Duke", which he had earlier sold to Beck prior to the collision. While charging some other owners of horses, Boyd did not charge Beck for stabling "Duke". He was accustomed to expect and receive Beck's aid in maintenance of his premises.

It is undisputed that Duke escaped therefrom on the day of the collision. Beck, who daily went to the premises to feed his horse, and perhaps ride, went to feed Duke in the late afternoon. Duke was not at the stables, and was thought to be in one of the connecting pastures in which horses grazed. Some other horse owners were present and Beck asked one who was his friend to "run him up" out of the pasture to the stables so that he could be fed. Beck waited while the friend rode out and until he returned with several animals he had "run up" on the return trip. Beck was informed by the friend that he had not seen Duke. Clearly there was the incorrect assumption that somehow the friend had "missed" Duke, plus the assumption that he was still in the pasture. Beck, not desiring to remain, obtained the friend's assurance that he would "chase him on up" to the stables and feed him. Beck left without making any search.

Shortly before 8:00 P.M. (October 17, 1972) at a point near the Boyd premises, Mrs. Sheppard collided with Duke on Highway 377. Incident to the collision she sustained personal injuries. Her daughter was also injured. The Sheppard automobile was wrecked and Duke was killed.

Boyd, having within the hour been informed that there had been an accident, went to the site and observed what had occurred. Immediately he conducted an inspection of the condition of his gates and fences, finding nothing broken and no defect. The following day he made a daylight inspection, finding no defect in the facilities to which there was usual resort in confining the horses upon his premises. These were facts to which Boyd gave his testimony.

■ With presumptions proper to be made, we have concluded that under the

Sheppards' pleadings and proof they made out a *prima facie* case at common law entitling them to have their case against Beck submitted to the jury. To do this is to sustain their Point of Error No. 10 based upon the contention that "there was evidence to go to the jury concerning the Appellees' failure to keep a proper lookout with regard to the horse in question". There would not be the same right as applied to their case against Boyd, who had no knowledge that Duke was missing from his premises until after the collision had occurred.

The presumptions aforementioned would be that the premises from which Beck's friend had attempted to "run up" Duke were of open character and on generally level land; i. e., premises of a nature where if the horse was still safely contained thereon he should have been observed. The record was substantially silent upon the nature of Boyd's premises. The friend informed Beck that despite his search he did not find Duke. Because of the foregoing, it would be a jury question as to whether an ordinarily prudent person in the same or similar circumstances as Beck would be negligent in failing to make further search for Duke, and whether there should have been the discovery that Duke had either escaped or been let out of the enclosure. Furthermore, with the proximity of Highway 377 shown, it would be a jury question as to whether an ordinarily prudent person should have anticipated that Duke was upon the highway or might go upon the highway and cause a collision.

■ As applied to Boyd, the Sheppards could not be held to have made out the same character of *prima facie* case. He had no notice or knowledge that Duke was escaped. He was, if anything, an independent contractor as applied to Beck; certainly not Beck's principal or agent.

The logical initial presumption that Boyd was negligent in respect to proper maintenance of the enclosure intended to confine Duke to his premises could be properly said to have "vanished" when he went forward with evidence to establish that there was no defect in the enclosure at any time material to the occurrence.

■ It has never been the law in civil cases that the burden of proof is upon the defendant whose animal is loose upon the highway and causes injury as result of collision to prove that he is not negligent. In instances where such a defendant has offered no evidence in explanation or in defense of the charge against him that he is responsible for permitting his animal to be on the highway, there obtains the presumption that the animal's presence was due to his negligence so as to qualify the plaintiff's case as one in which he has made out a *prima facie* case of liability of the defendant.

The presumption under discussion is like unto that where the vehicle involved in a collision bears the name of a person or firm, and where the presumption allowable thereupon to be made that it was owned or in any event operated by such person or firm's agent in the scope and course of his employment. As applied thereto it is settled law in Texas that such presumption is not evidence but rather a rule of procedure or an "administrative assumption" which "vanishes" or is "put to flight" when positive evidence to the contrary is introduced. *Empire Gas & Fuel Co. v. Meugge*, 135 Tex. 520, 143 S.W.2d 763, 767 (1940); 23 Tex. Jur.2d, p. 112 "Evidence", § 70, "Rebuttal of disputable presumptions." The burden of proof never becomes that of the defendant, though the burden to go forward with rebuttal evidence is shifted to the defendant if the plaintiffs' proof—as of a *prima facie* case by presumption—is to be destroyed.

Directed to this principle of law as applied to application of V.A.T.S. Art. 6971a, "Animals running at large on State Highways; . . . ", and affirming that highway presence of livestock presents no more than the rebuttable presumption that such presence was due to negligence of the owner or custodian are the following: *Adamcik v. Knight*, 170 S.W.2d 521 (Tex.Civ.App.— Austin 1943, no writ history); *Dorman v. Cook*, 262 S.W.2d 744 (Tex.Civ.App.—Beau-

mont 1953, writ dism'd). *Ramey v. Richardson*, 397 S.W.2d 288 (Tex.Civ.App.— Amarillo 1965, writ ref'd n. r. e.), cited by appellees, is one which seemingly is in conflict with *Adamcik* and *Dorman*. However, the holding in *Ramey* would not necessarily make our decision in the instant case one which would be in conflict.

In view of Boyd's evidence, the Sheppards, having thereby lost benefit of any presumption, were in position of having no evidence to establish the requisite *prima facie* case against him.

The Texas Stock Laws have a somewhat interesting history, inappropriate to our discussion. Sufficient is it to say that the question above discussed falls within the provisions of present day (since 1973) Art. 6971a, supra, formerly V.Ann.Pen.Code Art. 1370a.

While the Article was a penal statute for imposition of a penalty, as distinguished from the imposition of liability, there may have been good reason for the contention that the State should prove actual knowledge of the escape of an animal upon the highway before the owner or custodian should be held guilty and fined. However, in a civil case of injury or damage resultant therefrom, the same contention would not be justified. It is only common sense to apply the rule above discussed upon the rebuttable presumption of negligence in a civil suit for damages.

As applied to defendant Boyd the judgment is affirmed. The judgment in the case as against defendant John Beck is reversed and remanded to the trial court for another trial.

Costs of appeal are assessed against defendant John Beck.